UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:15-CV-80019

SUSAN SPENCER, individually and as
personal representative of the estate of
JOSEPH FERRANS, II,

      Plaintiff,

vs.

THE CITY OF WEST PALM BEACH and
JOHNNY RADZIUL,

      Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS TO DISMISS

This cause is before the Court on two motions to dismiss.  (DEs 9, 10).  The motions are

ripe for consideration.  For the following reasons, the Court concludes that the motions should be

granted in part and denied in part.

### I.  Background

This action arises from the death of Joseph Ferrans II following a high-speed police

pursuit in West Palm Beach, Florida.  (DE 1-2).  At the time of the incident, Defendant Johnny

Radziul was an officer in Defendant West Palm Beach's ("the City") police department.  (Id. ¶

11).  Plaintiff alleges that Defendant Radziul was in an unmarked police vehicle when he

witnessed Mr. Ferrans, who was driving a motorcycle, perform a "minor traffic infraction of

making a lane change without signal."  (Id. ¶¶ 18, 20).  Thereafter, Defendant Radziul initiated a

high speed pursuit of Mr. Ferrans.[1]  (Id. ¶ 19).  Plaintiff alleges that, during the course of the

pursuit, Defendant Radziul caused his unmarked vehicle to "collide, come into contact, or be

maneuvered in a way" to cause Mr. Ferrnans to lose control of his motorcycle and crash into a

tree.  (Id. ¶ 25).  Mr. Ferrans died of his injuries.  (Id.).  Plaintiff alleges that Defendant Radziul's

actions "were intended to harm, injure or cause [Mr. Ferrans's] death."  (Id. ¶ 27).

      Mr. Ferrans's mother and personal representative, Plaintiff Susan Spencer, initiated this

action in state court against Defendant Radziul and the City.  After an amended complaint

asserted federal causes of action, Defendants removed to this court.  (DE 1).  The Amended

Complaint states five causes of action: As to Defendant Radziul, Plaintiff asserts a state-law

wrongful death claim (Count I) and a claim under 42 U.S.C. § 1983 for deprivation of life and

liberty without due process of law (Count IV); Plaintiff asserts the same causes of action against

Defendant City (Counts II and III) and also asserts a claim for failure to adequately train and

supervise (Count VI) (misnumbered).

      Defendants move to dismiss for failure to state a claim and on immunity grounds.  (DEs

9, 10).

## II.  Discussion

### A.  Legal Standard

      Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of

the claim" that will give the defendant fair notice of what the plaintiff's claim is and the ground

on which it rests.  Fed.R.Civ.P. 8(a).  The Supreme Court has held that "[w]hile a complaint

---

[1]  In the Amended Complaint, Plaintiff does not allege that Defendant Radziul attempted
to effect a traffic stop by activating police lights or sirens.  (DE 1-2 ¶¶ 18-20).

attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (internal citation and alteration omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679.  The Court must accept all of the plaintiff's factual allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

Because Plaintiff's state-law claims are brought pursuant to this Court's supplemental jurisdiction (DE 1-2 ¶ 6), the Court will analyze whether Plaintiff's federal claims state a claim to relief before considering the state-law claims.

### B.      Count IV—§ 1983 Claim Against Defendant Radziul

In Count IV, Plaintiff alleges that Defendant Radziul, while acting under color of state law, deprived Mr. Farrens of "life and liberty without due process of law" by engaging in a high-speed pursuit that culminated in Mr. Ferrans's death.  (DE 1-2 ¶ 11).  Defendant Radzuil argues that the alleged facts "do not state a cause of action" for a violation of the Fourteenth

3

Amendment's guarantee of substantive due process.  (DE 9 at 8).[2]

The parties agree that the "applicable standard to apply under the Fourteenth Amendment in high-speed chase cases is whether the conduct of the government shocks the judicial conscience."[3]  White v. Polk Cnty., No. 04-CV-1227, 2006 WL 1063336, at *6 (M.D. Fla. Apr. 21, 2006) aff'd, 207 F. App'x 977 (11th Cir.); (see DE 9 at 9; DE 16 at 8).  The Supreme Court applied this standard in the context of high-speed police pursuits in County of Sacramento v. Lewis, 523 U.S. 833 (1998).

Lewis involved a high-speed police pursuit during which an officer chased a speeding motorcycle driver, resulting in the death of the motorcycle's passenger after the motorcycle crashed.  The Supreme Court faced the question of "whether a police officer violates the Fourteenth Amendment's guarantee of substantive due process by causing death through deliberate or reckless indifference to life in a high-speed automobile chase aimed at apprehending a suspected offender."  Id. at 836.  The Court answered the question in the negative, "hold[ing] that in such circumstances only a purpose to cause harm unrelated to the legitimate object of arrest will satisfy the element of arbitrary conduct shocking to the conscience, necessary for a due process violation."  Id.  The Court held emphatically that

_____

[2]  Defendant Radzuil raises this issue while discussing qualified immunity.  (DE 9 at 8). The Court will first analyze whether Plaintiff states a claim for relief before turning to the issue of qualified immunity.

[3]  In her response, Plaintiff argues that her claim is also cognizable as an "unreasonable seizure" under the Fourth Amendment.  (DE 16 at 7-8).  The Amended Complaint does not allege that Defendants' actions violated Mr. Ferrans's rights under the Fourth Amendment, but rather his "life and liberty" interests protected by the Fourteenth Amendment's Due Process Clause.  (DE 1-2 ¶¶ 48, 51, 54, 55-56, 59).  The Court will analyze only the claims presented in the Amended Complaint.

4

"high-speed chases with no intent to harm suspects physically or to worsen their legal plight do not give rise to liability under the Fourteenth Amendment, redressible by an action under § 1983." Id. at 854.

In order to meet the shocking-the-conscious standard, it must be shown that the pursuing officer's "acts were motivated by an intent to harm" the fleeing suspect.[4] White v. Polk Cnty., 207 F. App'x 977, 979 (11th Cir. 2006) (unpublished).  This motivation must be "unrelated to the legitimate object of arrest" and "unjustifiable by any government interest." Lewis, 523 U.S. at 836, 849.  That is, "the actions of the officers must be completely unrelated to the legitimate exercise of executing an arrest and must be done with the purpose to cause harm." Levy v. City of Hollywood, 90 F. Supp. 2d 1344, 1347 (S.D. Fla. 2000); see also Gaillard v. Commins, 562 F. App'x 870, 877 (11th Cir. 2014) (under Lewis, substantive due process claim does not exist unless officer "intended to hit [plaintiff] only to hurt him—totally unrelated to effecting an arrest").

Given these principles, Defendant Radziul cannot be held liable under § 1983 for causing Mr. Ferrans death during a high-speed pursuit unless his conduct shocks the judicial conscious, i.e., unless his conduct was motivated by an intent to harm—and only an intent to harm—Mr. Ferrans.  Plaintiff alleges that, after witnessing a minor traffic violation, Defendant Radziul collided his vehicle with Mr. Ferrans's motorcycle with an "inten[t] to harm, injure or cause [Mr. Ferrans's] death."  (DE 1-2 ¶ 27).  Elsewhere, Plaintiff alleges that Defendant's actions were "intended to terminate the movement of [Mr. Ferrans's] vehicle by deliberately causing harm to

---

[4]  One court has noted that whether the officer could have avoided the accident by "simply turn[ing] on his lights and siren and pull[ing] [the fleeing suspect] over" is not part of the shocking-the-conscious inquiry.  White, 2006 WL 1063336, at *7.

the operator."  (Id. ¶ 58).  From these facts, a plausible claim is made that Defendant Radziul acted with more than a mere intent to effect an arrest, and instead acted with intent to harm Mr. Ferrans physically by colliding with his motorcycle.  See Patterson v. Walden, No. 13-0109, 2013 WL 3153761, at *4 (S.D. Ala. June 18, 2013) (holding that plaintiff stated a claim where defendant initiated high-speed pursuit after minor traffic infraction, followed plaintiff at high speed, and rear-ended plaintiff's vehicle with sufficient force to cause it to crash).  Further developments may require that the Court examine the veracity of these allegations; however, they are sufficient to survive a motion to dismiss.  See Iqbal, 556 U.S. at 678.

The Court also concludes that Defendant Radziul is not entitled to qualified immunity under the facts alleged.  The qualified immunity issue requires the Court to address two questions: (1) whether a constitutional right was violated on the facts alleged, and (2) whether that right was clearly established.  See Saucier v. Katz, 533 U.S. 194, 200 (2001).  Given the Supreme Court's holding in Lewis, it is now clearly established that an officer violates the Fourteenth Amendment during a high-speed pursuit when he operates his vehicle with the sole purpose of causing injury to a fleeing suspect.  See 523 U.S. at 836.  Accepting Plaintiff's allegations in that regard as true, Defendant Radziul is not entitled to qualified immunity.

**C.    Count III—§ 1983 Claim Against West Palm Beach**

In Count III, Plaintiff alleges that Defendant West Palm Beach "instituted and followed polic[ies], procedures and customs" that lead to the deprivation of Mr. Ferrans's life and liberty without due process of law.  (DE 1-2 ¶ 48).  Additionally, Plaintiff alleges that the City instituted such policies and customs by "failing to discipline its agents for their actions and inactions." (Id. ¶ 49).  Plaintiff alleges that the City's policy was the "moving force" behind Defendant

6

Radziul's vehicular pursuit, although Plaintiff also alleges that Defendant Radziul knew "that such pursuit violated applicable law and policies, practices and procedures of the West Palm Beach Police Department."  (Id. ¶¶ 23, 52; see also id. ¶ 26.c. ("pursuit was not conducted . . . pursuant to a written policy governing high-speed pursuit adopted by the employing agency")). The City argues that the factual allegations in Count III fail to state a § 1983 claim based on officially-adopted policies and customs.  (DE 10 at 7).

It well-settled that "a municipality cannot be held liable under § 1983 on a respondeat superior theory."  Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  Rather, a city may be sued under § 1983 when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."  Id. at 690.  That is, a plaintiff must demonstrate the existence of "an existing, unconstitutional municipal policy."  City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985) (plurality opinion); accord Schmelz v. Monroe Cnty., 954 F.2d 1540, 1544 (11th Cir. 1992).  Likewise, a city "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  Monell, 436 U.S. at 690.  Under either theory, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation," sufficient to say that the policy or custom was the "moving force" behind the constitutional violation.  City of Canton v. Harris, 489 U.S. 378, 385, 388 (1989).

Plaintiff's factual allegations concerning the "policy, procedure, or custom" at issue are vague at best.  Plaintiff alleges that the City had written standard operating procedures that "established a vehicular pursuit policy by unmarked police vehicles," that this policy imbued

officers with "broad discretion," and that the policy "directly resulted" in Mr. Ferrans's death. (DE 1-2 ¶¶ 48, 52).  Missing from the complaint, however, is any direct indication of how this policy was the "moving force" behind the constitutional violation in question—Defendant Radziul's alleged <u>intentional infliction of harm</u> on Mr. Ferrans's during a high-speed pursuit.

In her response to Defendants' motions to dismiss, Plaintiff argues that the policy in question is the City's "approval of non-felony traffic stops and pursuits in unmarked law enforcement vehicles."  (DE 16 at 10).  Plaintiff does not allege that this policy is itself unconstitutional.  See <u>Tuttle</u>, 471 U.S. 808, 823-24 (1985).  Nor could she, as the alleged constitutional violation in this case, defined by <u>Lewis</u>, is not an officer's mere pursuit of a suspect in an unmarked car after a minor traffic violation, but rather an officer's pursuit of such person with "only a purpose to cause harm unrelated to the legitimate object of arrest."  <u>Lewis</u>, 523 U.S. at 836.  If Plaintiff intends to pursue a claim against the City based on an official policy of inflicting intentional harm on fleeing suspects, then she must allege that such a policy exists.[5]

Alternatively, if Plaintiff intends to rely on a custom of harm-intending pursuits growing from the City's alleged "failure to investigate or discipline" its officers, then Plaintiff must plead sufficient facts showing that such an unwritten custom exists.  See <u>Ott v. City of Mobile</u>, 169 F. Supp. 2d 1301, 1313 (S.D. Ala. 2001).  "Proof of a single incident of unconstitutional activity is not sufficient to impose liability against a municipality."  <u>Craig v. Floyd Cnty., Ga.</u>, 643 F.3d 1306, 1310 (11th Cir. 2001) (internal quotation marks omitted) (citing <u>Tuttle</u>, 471 U.S. at 823-24).  Rather, "considerably more proof than the single incident [is] necessary in every case to

---

[5]  This will likely prove a difficult task, "[b]ecause municipalities rarely have an official policy that endorses a constitutional violation."  <u>Craig v. Floyd Cnty., Ga.</u>, 643 F.3d 1306, 1310 (11th Cir. 2011).

establish both the requisite fault on the part of the municipality, and the causal connection

between the 'policy' and the constitutional deprivation."  Tuttle, 471 U.S. at 824 (plurality

opinion); accord Schmelz, 954 F.2d at 1544.  Plaintiff has pled a single incident in which an

officer, Defendant Radziul, executed a high-speed pursuit with an intent to harm a fleeing

suspect, Mr. Ferrans.  (DE 1-2 ¶¶ 25, 27).  In order to pursue a claim that the City's "fail[ure] to

discipline" its officers led to a custom encouraging high-speed pursuits in which the aim was

solely to harm fleeing suspects, Plaintiff must pled that such harm-intending pursuits occurred

"considerably more" often than once.  Ott 169 F. Supp. 2d at 1314; see Craig, 643 F.3d at 1310.

Finally, to the extent Plaintiff seeks to establish municipal liability under § 1983 for

inadequate training, the Court notes that, "[w]here the policy itself is constitutional, inadequate

police training may establish § 1983 liability if 'the failure to train amounts to deliberate

indifference to the rights of persons with whom the police come into contact.'"  Schmelz, 954

F.2d at 1544 (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)).  The Amended

Complaint does not allege that the City's failure to train amounted to deliberate indifference to

the rights of fleeing suspects.  (See DE 1-2 ¶ 62) (alleging that the City's failure to train and

supervise was "deliberately indifferent" to Defendant Radziul's "decision").

For the foregoing reasons, Count III fails to sufficiently allege the existence of a

municipal policy or custom of engaging in harm-intending high-speed pursuits.  Plaintiff shall be

given leave to amend consistent with this order.

### D.    Counts I & II—Wrongful Death (Negligence)

Count I alleges that Defendant Radziul owed Mr. Ferrans "a duty to act with reasonable

care when performing his duties as a law enforcement officer" and that he breached that duty "by

acting intentionally, maliciously and with intent to injury, harm or cause death." (DE 1-2 ¶¶ 33-34). Count II alleges that the City is "vicariously liable" for the acts alleged. (Id. ¶¶ 44-45). Defendants move to dismiss, arguing that Florida law imposes no duty of care on an officer pursuing a fleeing vehicle. (DE 9 at 4; DE 10 at 4). Plaintiff responds only by arguing that a duty of care can be found under Florida's waiver of sovereign immunity statute, Fla. Stat. § 768.28. (DE 16 at 3-5).

Fla. Stat. § 768.28 waives sovereign immunity for certain torts; however, the statute also provides several "exclusions." (section title). In particular, the statute provides that:

> The employing agency of a law enforcement officer as defined in s. 943.10 is not liable for injury, death, or property damage effected or caused by a person fleeing from a law enforcement officer in a motor vehicle if:
>
> 1. The pursuit is conducted in a manner that does not involve conduct by the officer which is so reckless or wanting in care as to constitute disregard of human life, human rights, safety, or the property of another;
>
> 2. At the time the law enforcement officer initiates the pursuit, the officer reasonably believes that the person fleeing has committed a forcible felony as defined in s. 776.08; and
>
> 3. The pursuit is conducted by the officer pursuant to a written policy governing high-speed pursuit adopted by the employing agency. The policy must contain specific procedures concerning the proper method to initiate and terminate high-speed pursuit. The law enforcement officer must have received instructional training from the employing agency on the written policy governing high-speed pursuit.

Id. § 768.28(9)(d)(1.-3.). Nothing in the statute indicates that failure to meet these criteria will give rise to a cause of action, as opposed to defeating a claim of immunity. Florida courts have universally held that § 768.28 "does not create a new cause of action but provides an additional

remedy for causes of actions which otherwise exist." Airport Sign Corp. v. Dade Cnty., 400 So. 2d 828, 829 (Fla. Dist. Ct. App. 1981); see Trianon Park Condo. Ass'n, Inc. v. City of Hialeah, 468 So. 2d 912, 921 (Fla. 1985); Sams v. Oelrich, 717 So. 2d 1044, 1046 (Fla. Dist. Ct. App. 1998) (even under § 768.28, government entity is not liable for negligence absent a "common law duty of care"). The Court therefore rejects Plaintiff's contention that Defendants' liability is measured by their failure to abide by § 768.28(9)(d)(1.-3.). The Court must therefore turn to the common law for the applicable duty.

Defendants offer the case of Bryant v. Beary, 776 So. 2d 1157 (Fla. Dist. Ct. App. 2000), to show the absence of a common law duty of care. (DE 9 at 4; DE 10 at 4). There, Florida's Fifth District Court of Appeal held that:

> Common sense and all rational notions of public policy dictate that a violator fleeing law enforcement who injures himself as a result of his own criminal misconduct should not be able to bring an action for negligence against the law enforcement officer trying to detain him, or against his employer.

Bryant, 766 So. 2d at 1160. Bryant involved an incident where the fleeing suspect "injure[d] himself" by speeding through an intersection against a red light; it did not involve an incident where the pursuing officer allegedly collided with the suspect's vehicle intending to harm him. See id. at 1158. In City of Miami v. Horne, another case cited by Defendants, the Supreme Court of Florida held that a pursuing officer cannot be held liable for "reckless conduct simply because he pursued the offender." 198 So. 2d 10, 12 (Fla. 1967). The court elaborated, however, that "in doing so," the officer should "not exceed proper and rational bounds nor act in a negligent, careless or wanton manner." Id. at 13.

Although a pursuing officer may be not held liable because his "mere pursuit creates a

highway danger," id., the cases cited by Defendants do not stand for the proposition that a

pursuing officer has free rein to inflict wanton or intentional harm on a fleeing suspect.  Plaintiff

alleges that Defendant Radziul's actions were done in a malicious, wanton, and intentional

manner to cause harm or death.  (DE 1-2 ¶¶ 34, 40).  Accepting these allegations as true, the

Court concludes that they are sufficient to survive Defendants' motions to dismiss for failure to

state a claim.  See Iqbal, 556 U.S. at 678.

### 1.     Statutory Immunity—Defendant Radziul

Defendant Radziul argues that Fla. Stat. § 768.28 shields him from personal liability for

Plaintiff's wrongful death claim.  (DE 9 at 4-5).  That statute provides that:

> No officer, employee, or agent of the state or of any of its
> subdivisions shall be held personally liable in tort or named as a
> party defendant in any action for any injury or damage suffered as a
> result of any act, event, or omission of action in the scope of her or
> his employment or function, unless such officer, employee, or
> agent acted in bad faith or with malicious purpose or in a manner
> exhibiting wanton and willful disregard of human rights, safety, or
> property. . . .

Fla. Stat. § 768.28(9)(a).  The Court has concluded that Plaintiff sufficiently alleges that

Defendant Radziul's actions were done with "malicious purpose or in a manner exhibiting

wanton and willful disregard of human rights [or] safety"; therefore, he is not entitled to

immunity under § 768.28(9)(a) at this juncture.

### 2.     Statutory Immunity—Defendant West Palm Beach

The City argues that if Defendant Radziul's actions were done in a wanton or malicious

manner, then it is immune from liability under the portion of § 768.28(9)(a) that shields the "state

or its subdivisions" from liability for the malicious actions of its agents.  (DE 17 at 2).[6]  The

Court agrees.  If Defendant Radziul's actions were done in an intentional and malicious

manner—which is the only basis for finding that Plaintiff states a claim under either § 1983 or

the common law—then the City is not liable for such actions according to Fla. Stat. §

768.28(9)(a).[7]  Count II shall therefore be dismissed with prejudice.

### E.    Count VI—Failure to Train and Supervise

Count VI (misnumbered V) alleges that Defendant West Palm Beach failed to

"adequately promulgate, implement, or, in the alternative, oversee application of Florida Statutes

or internal policies pertaining to the decision, to initiate pursuit in an unmarked vehicle, manner,

supervision and termination of the vehicular pursuit by [Defendant Radziul]."  (DE 1-2 ¶ 61).

The City argues that Plaintiff has failed to identify the appropriate basis for bringing such a claim

and, moreover, has failed to state a claim.  (DE 10 at 7-8).

To the extent Plaintiff is pursuing an inadequate-training claim under federal law, she

must plead facts consistent with such a claim under § 1983.  See Schmelz, 954 F.2d at 1544.

---

[6]  The Court exercises its discretion to consider this argument, raised for the first time in the City's reply brief. Cf. Williams v. McNeil, 557 F.3d 1287, 1291 (11th Cir. 2009).  Plaintiff alleges that Defendant Radziul's collision with Mr. Ferrans's motorcycle was done "intentionally, maliciously and with intent to injure, harm or cause death."  (DE 1-2 ¶¶ 34, 40, 58).  Because the City cannot be held liable for its officers' actions that are "committed in bad faith or with malicious purpose or in a manner exhibiting wanton or willful disregard of human rights [or] safety," the application of Fla. Stat. § 768.28(9)(a) to the facts alleged seems unquestionable.

[7]  The statute provides: "The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Fla. Stat. § 768.28(9)(a).  The statute defines "subdivisions" of the state to include "counties and municipalities."  Id. § 768.28(2).

Leave shall be given to do so as discussed above.

To the extent Plaintiff's failure-to-train claim arises under state law, the City has not demonstrated that dismissal is appropriate. As discussed above, Plaintiff has stated a state-law claim for wrongful death based on intentional actions. Defendant's argument that there is no "underlying tort" is therefore rejected. (DE 10 at 7). Moreover, the "discretionary function" exception identified in <u>Lewis v. City of St. Petersburg</u> is inapplicable because Plaintiff challenges the effectiveness of the City's training "as it relates to the officer[] involved in the [incident]." 260 F.3d 1260, 1267 (11th Cir. 2001) (affirming dismissal because plaintiff "d[id] not challenge the implementation or operation of the City's police training program as it relates to the officers involved in the shooting, but rather . . . challenge[d] the City's policy decisions regarding what to include in the training of its police officers"); (DE 1-2 ¶¶ 61-62) (alleging that City's failure to train and supervise led to "vehicular pursuit by [Defendant] RADZIUL"). Therefore, Count VI shall not be dismissed.

### F.    Plaintiff's Personal Interest Under § 1983

Defendants argue that Plaintiff, Susan Spencer, does not have a cognizable due process in the death of her child, redressible under § 1983. (DE 9 at 10; DE 10 at 4). Plaintiff does not disagree; she argues that she is pursuing § 1983 claims only "on behalf of a parent of [her] minor child." (DE 16 at 10-11). Accordingly, as the Court reads the Amended Complaint and Plaintiff's response, Plaintiff shall not be permitted to pursue a § 1983 claim on her own behalf, but solely as the representative of her son's estate.

14

### III.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1.      Defendant Radziul's Motion to Dismiss (DE 9) is **DENIED**;

2.      Defendant West Palm Beach's Motion to Dismiss (DE 10) is **GRANTED IN PART AND DENIED IN PART**; it is **GRANTED** to the extent that Count II is **DISMISSED WITH PREJUDICE** and to the extent that Count III is **DISMISSED WITHOUT PREJUDICE** with leave to amend; it is **DENIED** in all other respects.

3.      Plaintiff shall file an amended complaint consistent with this order within **20 days**, on or before **August 20, 2015**.

**DONE AND ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 4ᵗʰ day of August, 2015.


_____
KENNETH A. MARRA
United States District Judge